# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br>vs.<br>VICTOR DAVID RODRIGUEZ,<br><br>                          Defendant. | CASE NO. 18CR2911WQH<br><br>ORDER |

HAYES, Judge:

      The matter before the Court is the motion to dismiss the information under § 1326(d) filed by the Defendant Victor David Rodriguez. (ECF No. 20).

## FACTUAL BACKGROUND

      On December 4, 1996, Defendant was convicted of assault with a deadly weapon and possession of a controlled substance for sale. On June 3, 1998, Defendant was served with a Notice To Appear (NTA) in immigration court for removal proceedings. The NTA did not state a time and place. On June 26, 1998, Defendant was present at an immigration hearing and ordered removed based upon his two felony convictions. Defendant waived appeal.

      In 2015, Defendant applied for admission at the Calexico Port of Entry and falsely claimed to be a United States citizen. After his illegal status was discovered, an expedited removal proceeding was initiated. Defendant initialed the pages of the Form I-867A containing admissions that he attempted to illegally enter the country on September 20, 2015, that he stated to the primary officer that he was a United States citizen, that he did not have any claim to being a United States citizen, and that he did

not have any pending application with the U.S. Citizenship and Immigration Services. Defendant did not sign the Jurat for the Record of Sworn Statement (Form 1-867A). Defendant was removed pursuant to the expedited removal. Defendant states in a declaration that he "did not know what the documents said because the process moved quickly and that [he] did not understand he was in formal removal proceedings." (ECF No. 20-2 at 4).

On March 14, 2018, Defendant was served with a NTA in immigration court for removal proceedings. The NTA did not state an exact time and place. Defendant was present at an immigration hearing on April 11, 2018 and ordered removed. Defendant waived appeal and was removed.

On May 17, 2018, Defendant attempted to enter the United States at the Calexico Port of Entry stating that he was a United States citizen. Defendant was arrested.

On June 14, 2018, an Information was filed charging attempted entry of a removed alien in violation of 8 U.S.C. § 1326 (a) and (b).

On August 20, 2018, Defendant filed a motion to dismiss the information on the grounds that his prior removal orders in 1998, 2015, and 2018 are invalid.

On September 3, 2018, Plaintiff United States filed an opposition to the motion to dismiss.

## APPLICABLE STANDARD

A predicate removal order is a necessary element of a § 1326 prosecution. Under 8 U.S.C. § 1326(d), an alien criminal defendant may not challenge the validity of a removal order "unless the alien demonstrates that – (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The entry of a removal order is fundamentally unfair for the purposes of § 1326(d)(3) only if the removal proceeding violated the alien's due process rights and the alien suffered prejudice as a result. *United States v. Arias-Ordonez*, 597 F.3d 972, 976 (9th Cir. 2010).

# ANALYSIS

## 1998 and 2018 removals

Defendant contends that the immigration judge did not have jurisdiction to conduct the removal proceedings in 1998 and 2018 because the NTAs served upon him contained no information regarding the date, time, and place of his hearings. Defendant contends that the NTAs did not meet the statutory definition under §1229(a)(1)(G) because the notices lacked critical information required under §1229(a)(1). Defendant contends that jurisdiction does not vest and removal proceedings do not commence where the notice to appear under §1229(a) fails to designate the specific time or place of the removal proceedings. Defendant asserts that the recent Supreme Court case, *Pereira v. Sessions*, 136 S.Ct. 2105 (2018), held that an NTA missing the time and date does not comply with the requirements of §1229(a)(1) and cannot serve to vest jurisdiction in the immigration court to enter a valid order of removal. Defendant asserts that his removals without jurisdiction establish prejudice.

Plaintiff United States contends that Defendant's prior removals are valid. Plaintiff United States asserts that the immigration judge was expressly conferred with the authority to conduct the removal proceedings. Plaintiff United States asserts that the time and place on the NTA is not a prerequisite to the vesting of jurisdiction to conduct removal proceedings. Plaintiff United States asserts that Defendant waived any challenge to the NTA by appearing at the immigration hearings in 1998 and 2018 without objection. Plaintiff United States contends that the vesting of jurisdiction is addressed in 8 C.F.R. § 1003.15 and provides no requirement to include the time and place on the NTA. Plaintiff United States contends that the *Pereira* decision is limited to the application of the stop time rule in § 1229b(d)(1).

In *Pereira v. Sessions*, 138 S.Ct. 2105 (2018), the United States Supreme Court addressed the "narrow question" whether "a document that is labeled 'notice to appear,' but . . . fails to specify either the time or place of the removal proceedings . . . trigger[s] the stop-time rule." *Id*. at 2110. The Court stated, "The answer is as obvious as it seems: No. A notice that does not inform a noncitizen when and where to appear for

removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule." *Id.*

The Supreme Court concluded:

> The statutory text alone is enough to resolve this case. Under the stop-time rule, "any period of . . . continuous physical presence" is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1). By expressly referencing § 1229(a), the statute specifies where to look to find out what "notice to appear" means. Section 1229(a), in turn, clarifies that the type of notice "referred to as a 'notice to appear' " throughout the statutory section is a "written notice . . . specifying," as relevant here, "[t]he time and place at which the [removal] proceedings will be held." § 1229(a)(1)(G)(i). Thus, based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, "specif[ies]" the "time and place" of the removal proceedings.

*Id.* at 2114. The Supreme Court stated that "when the term "notice to appear" is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a). . . . Failing to specify integral information like the time and place of removal proceedings unquestionably would deprive [the notice to appear] of its essential character." *Id.* at 2116-18 (internal quotations omitted).

8 U.S.C. §1229a(a)(1) provides that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability." 8 U.S.C. §1229a(a)(1). Section 1229(a) provides in part, " In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practible, through service by mail to the alien or to the alien's counsel of record, if any) specifying . . . [t]he time and place at which the [removal] proceedings will be held." Section 1229(a)(1)(G)(i). The statutory text of §1229(a) explicitly addresses the notice requirements to "the alien" – "written notice"; "in person" or "by mail"; and specifying integral information. However, the statutory language in §1229(a) does not address the vesting of jurisdiction in the immigration court.

8 U.S.C. § 1103(g)(2) expressly provides the authority conferred upon the Attorney General to "establish such regulations . . . as the Attorney General determines

to be necessary for carrying out" the immigration laws. 8 U.S.C. § 1103(g)(2). Pursuant to this delegation of authority, the Attorney General has promulgated regulations setting forth the requirements to commence proceedings in immigration court.

"Once a notice to appear is filed with the Immigration Court . . . jurisdiction over the individual's immigration case vests with the IJ, and it is the IJ's duty to adjudicate the case." *Gonzales-Caraveo v. Sessions*, 882 F.3d 885, 890 (9th Cir. 2018). 8 C.F.R. § 1003.14(a) provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. " 8 C.F.R. § 1003.15 explicitly address the requirements to vest jurisdiction before the Immigration Court and does not require that the Order to Show Cause and the Notice to Appear include time and place in order to vest jurisdiction in the immigration court. These provisions do not conflict with the notice requirements to the alien in §1229(a). The narrow issue of triggering of the stop-time rule under 8 U.S.C. § 1229b(d)(1) decided in *Pereria* does not effect the vesting of jurisdiction in the immigration court or invalidate the regulations establishing the commencement of immigration proceedings.

In this case, the Court finds that the procedural defect in the NTA under §1229(a) given to the Defendant was waived by the failure to raise an objection at the removal proceeding and cured by his appearance and participation in his removal proceeding. Defendant has not raised any further factual or legal challenges to the validity of his 1998 and 2018 removal proceedings. The Court concludes that the 1998 and 2018 removal orders are valid.

**2015 removal**

Defendant contends that his 2015 expedited removal was invalid because he did not understand that he was in a formal removal proceeding and that an order of removal could be entered against him. Plaintiff United States asserts that the 2015 expedited removal is valid on the grounds that the Defendant cannot show that the alleged due process violation resulted in prejudice.

Even assuming a due process violation, Defendant must "establish that he suffered prejudice as a result of the entry of the order." *United States v. Raya-Vaca*, 771 F.3d 1195, 1206 (9th Cir. 2014). "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). To demonstrate prejudice, Defendant "must show that he had 'plausible grounds for relief' from the removal order. That is, more than a theoretical possibility of relief." *United States v. Flores*, 901 F.3d 1150, 1162 (9th Cir. 2018).

In *Flores,* Court of Appeals explained,

> To determine whether an alien could have received relief from removal by withdrawing his application, we look first to the factors that the agency must consider in exercising its discretion to grant relief, and second, in light of those factors, and based on the unique circumstances of Flores's case, we determine whether it was plausible that Flores would have been granted relief. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013).
>
> To evaluate the factors relevant to the immigration officer's decision, our cases have turned to the Inspector's Field Manual for guidance, as it provides direction to field officers who must determine whether to grant relief. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1090 & n.16 (9th Cir. 2011); *see also Raya-Vaca*, 771 F.3d at 1206–07. While the Inspector's Field Manual instructs officers to consider all relevant facts and circumstances "to determine whether permitting withdrawal would be in the best interest of justice," *Raya-Vaca*, 771 F.3d at 1207 (quoting Inspector's Field Manual § 17.2(a) (2007), available at 2007 WL 7710869), it also enumerates six specific considerations: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations," *Barajas-Alvarado*, 655 F.3d at 1090 (citing Inspector's Field Manual § 17.2(a) ). Application of these nonexhaustive factors involves a highly individualized determination. *Raya-Vaca*, 771 F.3d at 1207. However, the manual also instructs that withdrawal should "ordinarily" not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant," such as the use of counterfeit documents. *Id.* (quoting Inspector's Field Manual § 17.2(a) ).

*Id.*[1]

In this case, the Court finds that Defendant's prior felony convictions, including

---

[1] Defendant's motion to compel discovery of a copy of the "Officer's Reference Tool" (ECF No. 32) is denied on the grounds that there is no showing that the requested information had any bearing on the 2015 removal proceedings.

two assault with deadly force convictions, weigh heavily against an exercise of discretion to grant him relief of withdrawal. Defendant's prior unlawful entries and false claim to United States citizenship demonstrated his intent to violate the law. *Raja-Vaca*, 771 F.3d at 1208. The Court finds that Defendant's family ties and long term residence in the United States do not provide humanitarian or public interest considerations weighing in favor of discretionary relief in this case. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1090 (9th Cir 2011). Defendant has not shown plausible grounds for relief. The Court concludes that Defendant's 2015 order of removal is valid.

IT IS HEREBY ORDERED that the motion to dismiss the information due to an invalid deportation (ECF No. 20) is denied and Defendant's motion to compel (ECF No. 32) is denied.

DATED: November 20, 2018

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge